[Circuit Court of Lucas County.]

MILLARD v. HENRY CONRADI ET AL, COUNTY COMMISSIONERS.

Decided, June 11, 1904.

*Compensation for Public Officers—Not Specifically Provided by Statute—Can Not be Collected from the County—Fees for Probate Judges—For Commitments to the Boys' Industrial School—To the Girls' Industrial Home—In the Matter of the Examination of the County Treasury—And for Inquests of Lunacy—The Rule of Custom Without Weight—Lunacy Cases not "Causes."*

1. Compensation can not be exacted from the county by a public officer for services performed for the public, unless such compensation is specifically provided for by statute.

2. There being no specific provision provided by statute for compensation to a probate judge for services rendered by him in connection with examinations made of the county treasury under his direction, fees for such services can not be legally allowed.

3. In the matter of inquests of lunacy, a probate judge is entitled to only such fees as are provided for in Section 719. For such services the provisions of Section 547 are not applicable.

4. Where a boy or girl is prosecuted and convicted of an offense against the laws of the state, and as a consequence is committed to the Industrial School or the Industrial Home, the probate judge is not entitled to fees in connection therewith, to be paid by the county; but where they are committed under the compulsory education law, or in cases where no prosecution and conviction is required, the compensation of the probate judge is the same as that fixed for clerks of courts of common pleas in like cases.

PARKER, J.; HULL, J., and HAYNES, J., concur.

Error is prosecuted here to the judgment of the court of common pleas. The plaintiff in error was judge of the probate court in and for Lucas county. He presented to the board of county commissioners accounts and claims for certain fees—in other words, certain fee bills were presented—which he claims should have been allowed by the commissioners and paid to him by the county. The bills were disallowed, and were taken under the statute to the court of common pleas. There he filed his petition. When the case came on to be heard, by agreement of the parties, no other pleading was filed, the facts stated in the petition being conceded, except the conclusion that the amounts claimed were due from the county to Millard. That was the real question in controversy. In other words, it is contended on behalf of the county that there was no liability of the county for the fees and charges under the fee bill as presented. The bill of exceptions consists of this concession as to the facts and these fee bills.

There are four bills for services, somewhat different in character as to each bill, and the plaintiff in error claims that they come under different statutes, and should be allowed under different statutes. One is for services in the matter of Henry Fisher, for $6.79, who, it appears, was sent to the Boys' Industrial School at Lancaster; another is in the matter of Lena Stern, who was sent to the Girls' Industrial Home, for $6.99;

another is in the matter of James H. McGuire and Louis E. Krieger, for $20.90, who were appointed to examine the treasury in pursuance of the statutes providing for such examination; and the last is in the matter of the state of Ohio v. Louis Shinaver, where an inquest of lunacy was held, for $8.23. So that in these particular bills it will be observed the amounts in controversy are not large, though it is said the question is of great public interest, because there are a great many other bills of the same sort pending in this county, amounting in the aggregate to a large sum, and that the question is one of interest throughout the state, because like bills are presented in other counties. It is stated in argument and not disputed, and we have no doubt it is true, that in most cases of the same character such bills have been allowed by the county commissioners throughout the state, and that such bills have been allowed from county funds, almost from time immemorial, or as long, perhaps, as such services have been required. So that it may well be said that the fact that these bills are challenged is no reflection upon the officers presenting the bills, and if the court shall find they are not entitled to payment of any of them, that would not in any way impeach the integrity of the officers. It is urged, however, that we shall give great weight and consideration to the fact that these bills have been allowed in this way for so long a time, and generally without question, but we are of opinion that this argument is not entitled to a great deal of weight. Such practices grow up, as we know, very often, when there is no support to be found for them in the provisions of the law.

I probably shall not take these different bills up in the order that I have mentioned them hereinbefore. I shall begin by discussing the bill for the appointment of the examiners of the county treasury. That appointment was made under Section 1129, Revised Statutes. The section is quite lengthy; I shall not read all of it. It provides for an examination of the books, vouchers, accounts, moneys, bonds, securities and other property in the treasury of the county by the commissioners as often as every six months each year, and provides also that the probate judge shall, once every six months, or oftener, if he deem it necessary, or whenever he is requested so to do in writing by

one or more of the bondsmen of the treasurer, appoint two examiners of the treasury, and that upon being appointed they shall proceed forthwith to examine. It defines their duties very fully, and the sort of report that they shall make; and it contains this provision:

"The said accountants shall certify the exact amount of money in the treasury, together with the amount belonging to each particular fund, also all property, bonds, securities, vouchers, assets and effects as aforesaid in writing, in triplicate, one copy of which certificate shall be recorded in the books of the treasury, and filed by the treasurer in his office, and one copy shall be recorded and filed by the auditor of the county; one copy thereof shall be duly reported to the probate court and be entered of record therein, a copy of which shall be furnished by the probate judge for publication, one week in two newspapers of opposite politics, of general circulation in the county in which such examination is made, and said accountants so appointed and performing the duties therein required, shall be paid $5 per day for the time necessary to the performance of the same, out of the county treasury, on a warrant drawn by the county auditor and approved by the certificate of said court."

That fee of $5 per day to the accountants is the only fee provided for in this section of the statute or in the statutes providing for this examination. But it will be observed that the statute requires considerable services of the probate judge; the matter of selecting and appointing these officers, which involves a certificate of their appointment, which they present to the treasurer as their authority; the preparing by him of a copy of their report which is to be furnished for publication, and recording of such report; and perhaps some other services which I have not mentioned. But there is no fee or compensation specifically provided for such services.

The sections of the statutes which provide in a general way for the fees of the probate judge are Section 546, which contains what is called the "fee bill," which is very lengthy, and which specifies a great many things on account of which fees may be charged, and the fees that may be charged therefor, and Section 547, which provides that "for any other services not herein provided for, the same fee shall be allowed as for

similar services in the court of common pleas of the same county.'' Running through the statutes, we find in ditch cases and in various other proceedings, special provisions for a fee or other compensation in those particular cases, but the compensation provided for the bulk of the services to be performed by him is that provided for by Sections 546 and 547. In Section 546 we find no provision for a fee or compensation that would be appropriate to the services provided for by Section 1129. It is claimed, however, that he should receive compensation to be based upon that provided for clerks of the court of common pleas in this county, under the provisions of Section 547. It is to be observed that the compensation here claimed is against the county. Plaintiff in error is claiming compensation from the county, and in view of that I call attention to a number of cases decided by our Supreme Court and a few by the circuit courts, which, it seems to us, are entirely inconsistent with the idea that compensation can be exacted from the county by an officer for services performed for the public, unless such compensation is specifically provided for by statute. Some of the cases that I shall cite do not come to this exact proposition, but they all have some bearing on it.

In *Debolt* v. *Cincinnati Township Trustees,* 7 O. S., 237, it is said: ''An officer whose fees are regulated by statute can charge fees for those services only to which compensation is by law fixed.'' In the case of *Anderson* v. *Jefferson County Commissioners,* 25 O. S., 13, it is held that ''where a service for the benefit of the public is required by law, and no provision for its payment is made, it must be regarded as gratuitous, and no claim for compensation can be enforced.'' This rule is more fully stated in a later case of *Strawn* v. *Commissioners,* 47 O. S., 404, 408. That was a claim by the county surveyor for making a record of a private survey. The court concludes that he is not required to make such records, and then says:

''However, were this not so, yet it does not follow that because a private survey is required to be recorded by a public officer the public is compelled to pay the fees for recording it. In the case before us no statutory provision has been shown directly authorizing payment out of the public funds of the fees

of a county surveyor for recording a private survey; that, however, may not be necessary, for doubtless such an authority might be gathered by construction from the body of a statute in the absence of express words; but in such case the implication of a duty on the part of the public to pay must clearly appear. The fact that a duty is imposed upon a public officer will not be enough to charge the public with an obligation to pay for its performance, for the Legislature may deem the duties imposed to be fully compensated by the privileges and other emoluments belonging to the office, or by fees permitted to be charged and collected for services connected with such duty or services, and hence provides no direct compensation therefor, to be paid out of the public treasury.''

Following these cases in the order of their dates, when they were decided, I call attention now to the case of *Butler Co.* v. *Wellever, Clerk,* in 12 C. C., 440, the closing paragraph:

''It is not a pleasant thing to disallow claims of an officer of the court for services actually rendered by him, many of which are necessary and valuable, and for some of which he can receive no compensation from any other source. But with an understanding of the law, that they can not be paid from the county treasury unless such payment is explicitly provided for, our duty is plain, and must be performed.''

The next is the case of *Jones, Auditor,* v. *Commissioners,* which went up from this county, 57 O. S., 189. The opinion is by Judge Spear. After citing these earlier cases decided by the Supreme Court, he says, page 209:

''The conclusion inevitably follows that the auditor's services in making the report for the commissioners must be deemed, if not gratuitous, at least satisfied by the salary attached to his office, and that he is not entitled to extra compensation for such services, payable out of the county treasury. And this conclusion follows, whether the sections quoted impose the duty on him to make such report, or devolve it primarily upon the commissioners, the duty of the auditor being only a general one to aid them, a question which it is not necessary to decide to dispose of the case.''

We find no specific compensation provided for these services, and we hold that as to this bill the court of common pleas did not err.

We next come to the question presented by the bill for hold-
ing an inquest of lunacy.   For these services compensation is
claimed under Section 719, which provides the costs and fees in
inquests of lunacy:

"The taxable costs and expenses to be paid under the pro-
visions of this chapter shall be as follows: To the probate judge·
with whom the affidavit is filed, the sum of $2 for holding an
inquest; for each warrant, certificate or subpœna he necessarily
issues, the same fees as are allowed by ·law to the clerk of the
court of common pleas for similar services; and the amount of
postage on all communications to and from the superintendent
which the judge is required to pay."

And there are provisions as to the compensation of other
officers.

It is conceded that the probate judge is entitled to the com-
pensation specifically provided by this section of the statute in
such cases, but it is contended on behalf of the county that in
some of the charges in his fee bill it is apparent, that not con-
fining himself to the fees provided by this section of the statute,
the probate judge has undertaken to charge under Section 547,
Revised Statutes, for ·other services which he has been required
to perform, basing his claim upon the provision of the section
that he is to have such compensation as the clerk of the court
of common pleas shall have in like cases where a specific pro-
vision for his compensation is not made in the statute.   In
addition to these charges he has also made some charges under
Section 546, especially the charge for making up a complete
record at 8 cents per 100 words, $1.60.   We are of the opinion
that Section 547, which allows compensation such as is allowed
the clerk of the court of common pleas, has no relation to serv-
ices of this. character performed by the probate judge, which are
to be paid for by the public; that it has relation to causes and
proceedings between private parties, and that that is what is
provided for by Section 546, and Section 547 is intended to
cover the cases or the items that may have been omitted from
Section 546.   We therefore hold that under Section 719 the
probate judge can have no compensation other than that actu-
ally provided for in Section 719.   That does not provide com-

pensation for making up a record. When we turn to Section 546, which does provide for compensation for services of that character, and undertake to apply it to lunacy cases, we meet with another difficulty, for it reads, "making up complete records in cause, 8 cents for each 100 words, but no complete record shall be made in any case, except when the title of real estate is drawn in question the court may order the same, or either party may require it, at his own cost." We have had occasion to pass upon the meaning of the word "cause" when found in fee bills. Our decision on the subject will be found in the case of *Clark* v. *Commissioners*, 14 C. C., 349. The case went to the Supreme Court (*Clark* v. *Lucas County Commissioners*, 58 O. S., 107). The closing paragraph in the decision in the case, which was by Judge Burket, reads as follows, page 112:

"The claim made by counsel for plaintiff in error to the effect that each cause means each name, whether plaintiff or defendant, is not tenable. A name is not a cause, neither is a plaintiff or defendant a cause."

There the clerk of the court was asking for compensation for indexing, and he made his cross-indexes with reference to each name, and claimed that in each instance where he made that index it was an independent cause. The court held that that was not correct.

"The word *cause* is used in the sense of an action, or lawsuit. There may be many parties to an action, but all combined constitute but one action, one lawsuit, one cause."

So it may be doubted whether the proceedings in lunacy cases are in the purview of the statute providing for the record of causes at all. But even if a cause, the record is not to be made where the title to real estate is not drawn in question, unless at the request of a party who may require it, at his own cost.

It is contended on the part of the plaintiff in error that that provision is exceedingly obscure; that it is impossible to get at the meaning of it, and the conclusion is that it should be ignored, or the statute should be regarded as providing for a complete record in all cases. But we had occasion to consider that provision, and we found it meant as I have expressed it;

that the complete record was not to be made unless title to real estate was drawn in question, and where the title to real estate was not drawn in question, the party who desired it and requested it should pay for it. Our position on that subject will be found in *Millard* v. *Lucas County Commissioners*, 13 C. C., 518, affirming a decision of Judge Pugsley of the court of common pleas in 4 N. P., 53, where the matter is more fully stated by the common pleas court. We affirmed his decision and approved his reasoning on the subject.

Our conclusion, therefore, is, upon the matter of the inquest of lunacy, that certain charges made are correct—those that come clearly within the purview of Section 719—and the others· are not correct; and such examination as we have made of this question convinces us that the fee bill made up tentatively by the counsel for the county, on page 9 of his brief, sets forth all that may be legitimately charged under the section: First, $2 for holding inquest; second, for each warrant, certificate or subpœna necessarily issued, the same fees as are allowed by law for the clerk of the common pleas court for similar services; and third, the amount of postage on all communications to and from the superintendent which the judge is required to pay. I believe these bills were disallowed *in toto;* we allow part, and the judgment will be modified in that respect as to that matter.

We come now to the question of fees charged in cases coming under the statute with reference to the Boys' Industrial School. That statute runs from Section 752, Revised Statutes, to 764*b*, and then there are other provisions on the subject found in the truancy law, especially in Sections 4022-4 and 4022-8.

Section 6470, Revised Statutes, provides:

"The judges for said probate courts shall be paid for their services in criminal cases such sums as the commissioners of said counties may allow, which sums shall be paid out of the county treasury of said counties, respectively, and said probate judges shall not receive any compensation by way of fees in any criminal business of which they have jurisdiction; but all costs and all fines by said probate court imposed, including the fees of the judge, shall be collected in the same manner as fines and costs are now collected by the court of common pleas, and the same by said probate judges shall be paid into the county treasury."

It is urged here on behalf of the county that the allowance of the county commissioners to the probate judge for services in criminal business covers his services performed with reference to the Boys' Industrial School and with respect to the Girls' Industrial Home; that these services are services in criminal matters. On the other hand, it is contended on behalf of the probate judge, the plaintiff in error, that these are not criminal cases; and attention is called to the fact that under the statutes with respect to the Girls' Industrial Home, beginning with Section 768, there is no provision for the conviction of a girl of a criminal offense before sending her to the Industrial Home; and also to the fact that under the statute with respect to compulsory education, providing for the sending of children to the Industrial School or the Industrial Home, whether boys or girls, there is no provision for their conviction of a criminal offense before so sending them; that it is not required that the child shall be convicted of a crime; and it is urged that it would be wrong to undertake to brand a child as a criminal, by treating these proceedings as criminal proceedings, in view of the absence of any specific provision of the statute that they shall be so regarded. It is urged by the plaintiff in error that the character of these proceedings is fixed by the statutes; that a proceeding against an incorrigible child or one who is a truant from school, or against a girl who is to be sent to the Industrial Home, is not a criminal proceeding; that therefore none of the proceedings should be regarded as criminal proceedings, and none of the provisions as criminal provisions. On the other hand, counsel for the county points out that under Section 753 a conviction of an offense is required as a condition precedent to sending a boy to the Boys' Industrial School, and he urges that that fixes the character of all proceedings under the statute as criminal proceedings.

We think that both counsel are partly right and partly wrong; that the proceedings are not the same in all cases, and have not the same character in all cases where the children are sent to these institutions by the probate judge; that if an immoral youth is convicted of an offense against the laws of the state under and in pursuance of Section 753, and for that reason is sent to the Boys' Industrial School, that is a criminal proceed-

ing; that there must be a criminal prosecution, and it must be in the regular and ordinary methods of a criminal prosecution. There must be the complaint lodged against him provided by law; he is entitled to a trial by jury; and that the prosecutor must proceed in all respects to his conviction as though he were prosecuted for the purpose of imposing the penalty of a fine or imprisonment provided by statute, instead of the purpose of sending the boy to the Industrial School. On the other hand, where a proceeding is under Section 4022, because of the boy's or girl's truancy, where no conviction of an offense is required, or no trial by jury is to be had, it does not resemble a criminal prosecution, and in such a case, it not being a criminal prosecution, the compensation of the judge is not fixed by Section 6470, but he may have his fees. He may have his fees in cases of boys sent to the Boys' Industrial School, for truancy, and girls sent to the Girls' Industrial Home for that or any other cause where conviction of offense is not required, and his fees are those fixed for clerks of the courts of common pleas in like cases. This is authorized by Sections 547, 759 and 4022-8, taken together.

Now that these proceedings where a conviction of an offense is not required are not criminal proceedings has been held by our Supreme Court in two cases. The first case is that of *Prescott* v. *State*, 19 O. S., 184. The proceedings were had under the statute authorizing the establishment of houses of refuge and the subsequent enactment providing that in the cases provided for in the first statute, boys who were found to be offenders might be sent to the State Reform Farm. The court upholds the constitutionality of the act, and has this to say with respect to the proceedings, page 187:

"The provisions referred to in our state Constitution relate to the preservation of the right of trial by jury and to the rights of the accused in criminal prosecutions. We do not regard this case as coming within the operation of either of these provisions. It is neither criminal prosecution nor a proceeding according to the course of the common law, in which the right to a trial by jury is guaranteed.

"The proceeding is purely statutory; and the commitment, in cases like the present, is not designed as a punishment for crime, but to place minors of the description, and for the causes

specified in the statute, under the guardianship of the public authorities named, for proper care and discipline, until they are reformed, or arrive at the age of majority. The institution to which they are committed is a school, not a prison; nor is the character of their detention affected by the fact that it is also a place where juvenile convicts may be sent, who would otherwise be condemned to confinement in the common jail or the penitentiary.''

It will be observed the statute on the subject of the reform farm, which is now called the Boys' Industrial School, was drawn in question, and it was held that the proceeding to send a boy there is not a criminal proceeding; but the statute at the time of this holding was not as it is now; it did not then provide for the conviction of an offense. It was similar in its terms to the provisions in the statute with respect to the Girls' Home and similar to the provisions of the statutes with respect to houses of refuge. In the statute on the subject of houses of refuge there is a provision setting forth the offenses for the commission of which an infant may be confined therein, and there are other provisions to the effect that unless required by the person put upon trial, there need be no record made of the proceeding and provision is made to place incorrigible children therein; so that it is in no proper sense a criminal prosecution, because it does not result in the conviction of an offense. The conviction requires him to remain and be educated. The conviction provided for is incidental, and no record is made of it unless he shall require it. So it is with respect to the Girls' Industrial Home. The court may require that there shall be a criminal prosecution, and then the statute provides for the institution of such prosecution, and in such cases, therefore, the probate judge would not be entitled to compensation for his services.

The statute (750, L., 61, Section 8) with reference to the Reform School for Boys provides that—

''Male youth, not over 16 nor under 10 years of age, may be committed to the reform school by any judge of a police, or judge of the court of common pleas, or the probate court, when, on complaint and proof by the parent, guardian, or next friends of such youth, supported by the sworn statement of two respectable witnesses, it is shown that he, by reason of his incorrigible

or criminal conduct, is beyond the control of such parent, guardian or next friend, and that, from regard to his future welfare and the protection of society, he should be placed under restraint.''

There is no provision now in the statute with respect to sending boys to the Industrial School.

Another case upon this subject is *Cincinnati House of Refuge* v. *Ryan*, 37 O. S., 197, 203. There the court refers with approval to the case of *Prescott* v. *State, supra,* and says this:

''The proceeding is purely statutory. It is intended to provide a summary method for caring for destitute children. The commitment is not designed as a punishment for crime, but to place destitute, neglected and homeless children, and those who are in danger of growing up as idle and vicious members of society, under the guardianship of the public authorities, for their proper care, and to prevent crime and pauperism. As to such infants, it is a home and a school, not a prison.''

In the case of *Quigley* v. *State*, 5 C. C., 638, this question is adverted to, and the truancy or compulsory education law was there drawn in question, and was sustained. Reference is made in the opinion to *Cincinnati House of Refuge* v. *Ryan*, and *Prescott* v. *State, supra,* as applicable to proceedings under the truancy law.

Our conclusion upon this matter is, that where boys are prosecuted and convicted of offenses against the laws of the state, and are therefore sent to the Boys' Industrial School, no fees are allowable to the probate judge to be paid by the county; but where they are sent up under the compulsory education law, or in cases where no prosecution and conviction is had, fees are to be allowed and paid, and the same is true in all cases where girls are sent to the Girls' Industrial Home.

Whether the bill in this particular case of the State of Ohio v. Louis Shinaver would come under the one rule or the other— that is to say, whether it was a criminal prosecution or a proceeding under the truancy law, we are not advised by this record, and since error, if any occur, must affirmatively appear on the record, we must assume that it was a criminal prosecution, and affirm, unless counsel shall agree that it was a case under

the truancy law, in which case the record can be made to say so, and the bill will be allowed.

The case of the girl, Lena Stern, who was sent to the Industrial Home, evidently was a proceeding under the statute to which I have referred, which does not require conviction of an offense, and as to that we hold that the bill should be allowed.

I believe no fault is found with the items in these two last bills, so that the decree of the court of common pleas will be modified in accordance with this opinion.

The judgment for costs in this court will go against the county.

*King & Tracy*, for plaintiff in error.

*W. G. Ulery* and *J. S. Martin*, for defendant in error.